Robert I. SILVERMAN, et al., Appellants

v.

Marion BARRY, Mayor of the District of Columbia, et al.

No. 81–1959.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 20, 1982.

Decided Feb. 7, 1984.

As Amended Feb. 9 and March 19, 1984.

Burton A. Schwalb, Washington, D.C., with whom Jerome Nelson, Laura A. Kumin and Stuart H. Newberger, Washington, D.C., were on the brief, for appellant.

Karen J. Krueger, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel and James R. Murphy, Acting Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees, Marion Barry, Mayor of the District of Columbia, et al.

Lynne Bernabei, Washington, D.C., for appellee-intervenor, Group to Save Van Ness South for Everybody, Inc.

Before WRIGHT, MIKVA and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Robert Silverman, Howard Pollinger, and WAVN, Inc. appeal the district court's dis-

missal of their complaint for want of jurisdiction. We reverse, finding jurisdiction proper under 28 U.S.C. §§ 1331 and 1343 (1976), and remand to the district court for proceedings not inconsistent with this opinion.

### I.

Appellants are the sole general partners in Van Ness Properties III, a limited partnership holding title to a residential apartment complex ("Van Ness") in the District of Columbia. On April 26, 1979, the partnership submitted applications to convert Van Ness to a condominium and a cooperative pursuant to the Condominium Act of 1976. D.C.Code Ann. § 45–1801 *et seq.* (1981). That statute permitted conversion of apartments which satisfied specific statutory criteria. The local agency responsible for processing such applications, the Department of Housing and Community Development, has never acted on them.

Thirty-three days after appellants filed the conversion applications, the District Council enacted the first in a series of "emergency" measures prohibiting conversion of Van Ness and other rental property. Each emergency act—promulgated, according to the appellees, under authority of the District's Home Rule Act—prevented condominium conversion for ninety days.[1] These successive measures effected, with narrowly defined exceptions, a ban on conversion extending at least nine months.

The Washington Home Ownership Council, Inc. ("WHOC"), a nonprofit organization composed primarily of real estate brokers and developers, challenged the legality of enacting successive "emergency" legislation in the District of Columbia superior court. The challenge was sustained, that court ruling that the District Council had abused its authority under the Home Rule Act by adopting successive and identical emergency bills. *Washington Home Ownership Council, Inc. v. District of Columbia,* C.A. No. 10624–79 (D.C.Super.Ct. Oct. 19, 1979). The District, however, obtained a stay of this order pending appeal and refused to process appellants' conversion applications.

The trial court's ruling was affirmed by the District of Columbia Court of Appeals in May of 1980. *District of Columbia v. Washington Home Ownership Council, Inc.,* 415 A.2d 1349 (D.C.1980). The District continued to refuse to issue appellants' "high rent" certificates which are necessary to obtain conversion permits, relying, on a new 180-day statutory moratorium on "high rent" conversions. That provision was followed by another emergency act prohibiting conversions, and, finally, by permanent conversion legislation severely restricting appellants' power to convert Van Ness. *See* Rental Housing Conversion and Sale Act of 1980, D.C.Code Ann. § 45–1601 *et seq.* (1981).[2]

---

1. Ordinarily, the District of Columbia's Home Rule Act permits the Council to pass legislation which becomes effective only after a 30-day layover in Congress, during which time Congress may disapprove of such enactment by concurrent resolution. D.C.Code Ann. §§ 1–227(a) to 1–233(c)(1) (1981). *See also District of Columbia v. Washington Home Ownership Council, Inc.,* 415 A.2d 1349, 1351–52 (D.C. 1980). The Home Rule Act "delegates to the Council legislative power over all rightful subjects of legislation within the District," *McIntosh v. Washington,* 395 A.2d 744, 750 n. 11 (D.C.1978) (citations omitted), but the two-house legislative veto provision was "imposed as an orderly way for Congress to carry out its constitutional responsibility to legislate for the District." *Washington Home Ownership Council,* 415 A.2d at 1352 & n. 9. In certain situations, however, the Council can bypass the 30-

day congressional layover period. If "emergency circumstances make it necessary that an act be passed after a single reading, or that it take effect immediately upon enactment," the Council may pass an emergency bill. D.C.Code Ann. § 1–229(a) (1981). However, "such act shall be effective for a period of not to exceed ninety days." *Id.*

We make no decision today regarding the effect of *Immigration and Naturalization Service v. Chadha,* —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), on this lawmaking procedure.

2. Despite holding that the District Council had "no authority to pass [successive] substantially identical emergency act[s] in response to the same emergency," the Court of Appeals noted that the specific emergency measure it held illegal had been superseded by permanent legis-

Appellants then sued the District government in the federal court. The complaint alleged violations of appellants' due process and equal protection rights claiming that the District Council's actions, and the inaction of the Department of Housing and Community Development, resulted in a taking of appellants' property without just compensation and constituted an unlawful exercise of police power; the current condominium law is alleged to constitute an impermissible delegation of legislative authority to the tenants. Appellants sought injunctive and declaratory relief to prevent the District from further interference with their property rights and to have the District's past actions declared illegal. The complaint also sought monetary damages and a writ of mandamus compelling the District government to take those steps necessary to restore appellants' rights as they existed when the original conversion applications were filed.

The District moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The District also argued that the local courts had exclusive jurisdiction over the dispute under the District of Columbia Administrative Procedure Act. Moreover, the District asserted that appellants had invoked federal jurisdiction "solely . . . to circumvent an adverse ruling by the District of Columbia courts," Brief for Appellees at 14, and that the WHOC litigation in the local courts operated as a res judicata bar to appellants' claims.

■■■ Following oral argument, the lower court dismissed the complaint for want of jurisdiction—the failure to present a substantial constitutional question—under 28 U.S.C. §§ 1331 and 1343. The lower court went on to find that even had appellants' allegations presented a substantial claim for relief, exclusive jurisdiction would lie in the District of Columbia court system under the local Administrative Procedure Act and the District of Columbia Court Reform and Criminal Procedure Act of 1970.[3] Finally, the court added, abstention was warranted under the facts of the case although it did not articulate any fact, policy or local law question upon which an abstention order might be based.[4]

This appeal followed.

lation. 415 A.2d at 1359 & n. 22. The court thus "le[ft] it to the parties and the trial court to evaluate the legal effect of" its ruling. Subsequently, both the District and WHOC filed motions for clarification in the trial court. That court eventually gave its ruling prospective effect only and held that successive emergency measures enacted prior to the effective date of the Court of Appeals' holding were of full force and effect. *Washington Home Ownership Council, Inc. v. District of Columbia,* C.A. No. 10624–79 (D.C.Super.Ct. Dec. 3, 1980). This ruling was not appealed.

3. Though the district court gave no reason for this ruling, it may have thought appellants' claim essentially one for administrative relief and hence arguably cognizable only in the District court system. Under *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), decided after the district court issued its order in this case, exhaustion of state judicial and administrative remedies is not a prerequisite to a section 1983 federal court action alleging constitutional violations. *Id.* at 516, 102 S.Ct. at 2568. This is particularly true where remedies available under the administrative scheme are not coextensive with those available in an Article III court. *See, e.g., Wilkerson v. Johnson,* 699 F.2d 325, 329 (6th

Cir.1983); *Jose P. v. Ambach,* 669 F.2d 865, 869 (2d Cir.1982). The present action is laid under 42 U.S.C. § 1983 (1976) and seeks remedies, such as damages, not available under the District of Columbia Administrative Procedure Act. We do not see any other reason why the courts of the District might be thought to have exclusive jurisdiction and the parties have mentioned none.

We also note that while the trial court did not rule on the res judicata and collateral estoppel arguments, the District's position does not appear frivolous. *See* Memorandum in Support of Defendants' Motion to Dismiss at 20–23; Brief for Appellee at 30 n. 23. On remand, therefore, the district court should initially consider this claim before proceeding to trial on the merits.

4. The abstention doctrines represent one type of prudential limitation restricting an Article III court's general obligation to hear federal constitutional claims. *See generally* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4241 *et seq.* (1978). Abstention from federal jurisdiction is the exception, however, and not the rule. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483

## II.

The district court ruled that appellants failed to establish jurisdiction under 28 U.S.C. §§ 1331 or 1343. While the jurisdictional threshold under each section is distinct, the difference seems more stylistic than substantive. *Harper v. McDonald,* 679 F.2d 955, 958 n. 4 (D.C.Cir.1982). Under section 1331, a complaint may be dismissed where the alleged constitutional violation "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed.

939 (1946). Similarly, a federal constitutional claim may be dismissed under section 1343 only if it is "obviously frivolous" or where "its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Hagans v. Lavine,* 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974) (quoting *Hannis Distilling Co. v. Mayor of Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910)). *Harper v. McDonald,* 679 F.2d at 958; *Tuck v. Pan American Health Organization,* 668 F.2d

(1976); *County of Allegany v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

The trial court did not specify which abstention rule it thought appropriate in this case. Nor did it address the threshold question of whether the abstention rules, doctrinally based on concerns of federalism and comity, apply at all in the District of Columbia, a creature of Congress. However, because we are of the view that abstention was not warranted here as described briefly below, we proceed as this court has on other occasions and assume, for discussion purposes only, that the abstention rules apply in the District with the same force as they do where a state sovereign is involved. *See, e.g., Kaplan v. Hess,* 694 F.2d 847, 850 n. 2 (D.C.Cir.1982); *Campbell v. McGruder,* 580 F.2d 521, 525 (D.C.Cir.1978).

Of the three abstention rules recognized by the Supreme Court, *Younger* abstention—appropriate where federal jurisdiction has been invoked to restrain then pending state criminal proceedings—is clearly not indicated here. *See generally Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Samuels v. Mackell,* 401 U.S. 66, 69, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Neither is *Pullman* abstention, which at the outset would require the existence of an "unsettled question of [local] law," *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975), the resolution of which might "avoid or modify the necessity of reaching [the] federal constitutional question[s]" raised by the appellants. *Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973). *See also Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). There appear to be no ambiguous questions of local law whose resolution might modify or moot the due process claims presented here. The constitutional claims are predicated upon the existence, as of April 26, 1979, the date on which the conversion and exemption permits were filed, of a

right to those permits under local law, and thus, a protected property interest under *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). *See infra* p. 1125. The statutory scheme under which this right is claimed establishes, it is alleged, that appellants were plainly entitled to the "high rent" certificates they sought and without which they could not convert their apartments. The statute defines in precise quantitative terms those apartments which could qualify for a "high rent" certificate and subsequent conversion. The Housing Department Administrator could deny those certificates only where the units claimed to fall into the "high rent" category failed to do so or where the applicant failed to follow prescribed procedure for obtaining the certificates.

The Supreme Court has also identified, as the third branch of the doctrine, *Burford* abstention—appropriate where there have been presented "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814–15, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976). *See also Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Unlike *Pullman* abstention, *Burford* abstention is predicated on neither unsettled state law nor a federal constitutional question, and, arguably, could be applied to avoid federal court interference in any state or local regulatory program. The sensitivity of state policy, however, is the traditional reason for invoking *Burford* abstention, and deference to local decision-making does further federalism. Nonetheless, sensitivity and the notion of localism alone do not provide a principled rationale for abstention where federal jurisdiction admittedly exists. Federal courts routinely decide local matters of great sensitivity and we are not convinced that abstention from a federal question case may be based on this rationale.

547, 549 n. 3 (D.C.Cir.1981). Under either standard, appellants have established federal court jurisdiction.[5]

The appellants alleged in their complaint that the District of Columbia violated their rights under the due process clause and the equal protection clause by refusing to permit the conversion of appellants' building through administrative delay on their applications, by enacting successive and illegal emergency measures which prohibited conversion, and by impermissibly delegating to the tenants of the building the power to prohibit conversion under the current legislative scheme. The complaint also alleges that the District, through the totality of its actions and inactions, has unlawfully taken the owners' property without just compensation.

In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court ruled that an administrative agency's failure to provide the appellant with a state-created entitlement prior to the termination of that claim under state procedure, deprived the appellant of a protected property interest in violation of the due process clause.[6] The Court carefully distinguished that situation from one where state legislative action terminates a party's claim. A state legislature was free to rescind statutory entitlements without violating the due process clause because "[i]n each case, the legislative de-

termination provides all the process that is due ...." *Id.* at 433, 102 S.Ct. at 1156.

The District relies on this latter principle and argues that appellants' claims lack merit because the government is free to modify or eliminate statutory entitlements. *See, e.g., United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). This argument misses the mark. Appellants have challenged the Department's arbitrary delay and refusal to grant conversion permits as well as the District Council's statutory changes. *Logan* makes clear that the two challenges raise distinct due process questions and that the cases relied upon by the District do not allow the executive branch arbitrarily to rescind entitlements guaranteed by the legislative branch. Moreover, the alleged deprivation in this case was occasioned in large part by legislative maneuvering that the District of Columbia Court of Appeals has held illegal. Under *Logan,* these claims are hardly "wholly insubstantial," *Bell v. Hood,* 327 U.S. at 682, 66 S.Ct. at 776, or "obviously frivolous." *Hagans v. Lavine,* 415 U.S. at 537, 94 S.Ct. at 1379 (citations omitted).

Appellants have also challenged the sequence of legislative enactments by the District Council prohibiting conversion as exceeding the police power granted to the District by Congress. Ordinarily, a properly enacted land use regulation would not exceed the District's police power. The Supreme Court has not struck down a zoning

---

5. We also note that while a party's claim may prove lacking when considered on the merits, that claim is not necessarily insubstantial for purposes of jurisdiction. In *Bell v. Hood,* the Supreme Court clearly stated that:

Jurisdiction ... is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to

determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

327 U.S. at 682, 66 S.Ct. at 776 (section 1331), *quoted in Hagans v. Lavine,* 415 U.S. at 542, 94 S.Ct. at 1381 (section 1343).

6. While the majority opinion did not address the appellant's equal protection claim, it appears that a majority of the Court concluded, in separate opinions, that the termination of appellant's claim by the state was also in contravention of the equal protection clause. *Logan v. Zimmerman Brush Co.,* 455 U.S. at 438, 102 S.Ct. at 1159 (separate opinion of Blackmun, J., Brennan, Marshall, O'Connor, JJ.); *id.* at 443, 102 S.Ct. at 1161 (Powell, J., Rehnquist, J., concurring in the judgment).

ordinance on police power grounds since 1928. *See Nectow v. City of Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928). *See also Eisen v. Eastman,* 421 F.2d 560, 567 (2d Cir.1969) (per Friendly, J.) (tracing modern Supreme Court due process analysis of land use regulation); *Developments in the Law—Zoning,* 91 Harv.L.Rev. 1427, 1433–34 (1978). This case, however, comes to us in a different posture. As we have noted, the District of Columbia Court of Appeals held illegal the successive emergency measures enacted by the District Council. Under these facts, we think the appellants' claim at least survives the jurisdictional threshold.

The complaint also alleges that the current regulatory scheme impermissibly delegates to private citizens the legislative power granted to the District Council. The Supreme Court has held this sort of delegation unconstitutional. *Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928); *Eubank v. City of Richmond,* 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912). *But see Thomas Cusack Co. v. City of Chicago,* 242 U.S. 526, 531, 37 S.Ct. 190, 192, 61 L.Ed. 472 (1917) (distinguishing *Eubank*). In 1976, the Court again considered the delegation issue in *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). Given the opportunity to overrule the *Lochner*-era cases of *Eubank* and *Roberge,* the Court chose instead to distinguish them. *Id.* at 677–78, 96 S.Ct. at 2364. *City of Eastlake* upheld a city charter provision requiring that any proposed changes in land use be ratified by 55% of the votes cast in a referendum. The court majority appeared to accept *Eubank* and *Roberge* as still valid precedent but distinguished them on the ground that they involved delegations "by the legislature to a *narrow segment* of the community, not to the people at large." 426 U.S. at 677, 96 S.Ct. at 2364 (emphasis in original). Three Justices, dissenting, would have invalidated the charter provision. *Id.* at 680, 96 S.Ct. at 2365 (Powell, J., dissenting); *id.* (Stevens, Brennan, JJ., dissenting). The Court's rationale, as well as the dissenters' positions,

may, not unreasonably, be taken to suggest that this version of the delegation doctrine retains vitality. *See* Note, *The Validity of Ordinances Limiting Condominium Conversion,* 78 Mich.L.Rev. 124, 135–41 (1979); *Developments in the Law—Zoning, supra,* 91 Harv.L.Rev. at 1532–42. The delegation claim is sufficient to survive a Rule 12(b) motion to dismiss.

Appellants' final constitutional claim alleges that the District, through the totality of events, has taken their property without due process. On the merits, this analysis calls for an "essentially ad hoc, factual inquir[y]." *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982) (citation omitted); *see also Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 294–95, 101 S.Ct. 2352, 2369–70, 69 L.Ed.2d 1 (1981); *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). A court must consider several factors including "the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action . . . ." *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). The inquiry "must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances." *Hodel,* 452 U.S. at 295, 101 S.Ct. at 2370.

We recognize that takings clause challenges in this context have not fared well. *See generally* Note, *supra,* 78 Mich.L.Rev. at 132–35. Nonetheless, in the absence of a dispositive decision by the Supreme Court, and in light of that Court's emphasis upon an individualized inquiry in takings clause cases, this claim should not be dismissed on jurisdictional grounds.

The district court's order is

*Reversed.*