**DISTRICT PROPERTIES ASSOCIATES et al., Appellants**

v.

**The DISTRICT OF COLUMBIA et al.**

No. 83–1845.

United States Court of Appeals, District of Columbia Circuit.

Argued March 8, 1984.
Decided Sept. 7, 1984.

William C. Casano, Washington, D.C., for appellants. Peter C. Schaumber and Brian W. Shaughnessy, Washington, D.C., were on the brief for appellants.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., was on the brief, for appellees.

Before WRIGHT, BORK, and STARR, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

In this case appellant landlords challenge the staffing and operation of the District of Columbia Rental Accommodations Office (RAO), the agency responsible for administering the local rent control laws. Their sweeping complaint charges that RAO intentionally deprives landlords of constitutional and statutory rights and runs its proceedings in such a lawless fashion that landlords are denied due process of law. The District Court believed that by enacting the District of Columbia Administrative Procedure Act, 1 D.C.Code § 1510(a) (1981),

Congress had granted the District of Columbia courts exclusive jurisdiction to review decisions of RAO. The District Court accordingly dismissed appellants' action. Appellants are here appealing that dismissal. Finding that the District Court had jurisdiction in this case, we reverse.

## I. BACKGROUND

### A. *Appellants' Legal Claims*

Appellants are the owners and manager of Capitol Park Towers, a housing complex in Southwest Washington. On July 13, 1981 they filed a class action in the United States District Court for the District of Columbia on their own behalf and on behalf of all landlords owning residential rental properties that RAO regulates. RAO is an agency of the District of Columbia Government under the authority of the Rent Administrator. 45 D.C.Code § 1514(a) (1981). The Rent Administrator has authority to hear "complaints and petitions" arising under the local rental housing laws, *id.* § 1515(c). He may delegate authority to RAO hearing examiners to hear administrative petitions and render "final" decisions. *Id.* § 1515(e)(2). Appeals may be taken from those decisions to the Rental Housing Commission (RHC), *id.* § 1513(a)(2),[1] and from there to the District of Columbia Court of Appeals. *Id.* § 1530 ("Any person or class of persons aggrieved by a decision of the Rental Housing Commission, or by any failure on the part of the Rental Housing Commission or Rent Administrator to act within any time certain mandated by this chapter, may seek judicial review of such decision or an order

compelling such decision by filing a petition for review in the District of Columbia Court of Appeals.").

The central charge of appellants' complaint was that RAO intentionally deprives landlords of due process of law in carrying out its adjudicatory functions.[2] Thus the complaint alleges, *inter alia*, that RAO intentionally hires hearing examiners who are unfamiliar with administrative procedures and biased against landlords. These examiners are then charged with enforcing the rental housing laws without regard to the facts, the constitutional rights of landlords, or the applicable laws. The result is that RAO allegedly conducts hearings and reaches decisions in ways that contravene fundamental principles of due process of law. In particular, hearing examiners allegedly fail to give landlords notice of issues to be decided in a hearing and fail to permit landlords to cross-examine tenant petitioners. In addition, appellants allege that examiners systematically fail to hear arguments by landlords and fail to make adequate findings of fact and conclusions of law. According to the complaint, RAO supervisors bolster this anti-landlord bias. If an examiner proposes to find in favor of a landlord, his supervisors allegedly instruct him to change the proposed finding.

As a means of frustrating landlords' rights to meaningful judicial review, RAO allegedly fails to provide adequate tape recordings of proceedings; thus cases in which appeals are taken must be reheard by a hearing examiner in order to create an adequate record for the court. Allegedly, RAO officials fail to keep indexes of deci-

---

1. At the time this suit was instituted the Rental Housing Act of 1977, D.C.Law 2–54, 45 D.C.Code § 1681 *et seq.* (Supp. VII 1980), was the organic statute governing local rent control and establishing the administrative apparatus by which it was administered. The statute has since been superseded by the Rental Housing Act of 1980, D.C.Law 3–131, 45 D.C.Code § 1501 *et seq.* (1981). The Rental Housing Commission was called the "Rental Accommodations Commission" under the 1977 Act. Because the function of the agency remains substantially the same under both old and new statutes, we find it convenient to use the new title in referring to it in this opinion. Therefore our references to the

Rental Housing Commission (RHC) should be understood to refer both to the Rental Accommodations Commission and to the Rental Housing Commission.

2. Because the District Court dismissed this case on jurisdictional grounds, we take the allegations of the complaint as true solely for purposes of ruling on the propriety of the dismissal. We do not of course express any opinion as to whether appellants could prove any of these facts to be true in proceedings on the merits of this case.

sions, although such indexes are mandated by their own regulations; they then impose treble damages pursuant to 45 D.C.Code § 1591(a) (1981) (providing for treble damages for landlords who "knowingly" violate rent control laws) upon landlords who have no way to find out the contents of those laws as interpreted in prior decisions.

Finally, appellants seem to allege that RAO administers the housing laws in such a way as to deprive appellants of property without due process of law. In particular, RAO allegedly refuses to permit landlords to charge rents sufficient to generate the 10 percent return on equity permitted by statute and denies them the right to "hardship" rent increases, thus freezing landlords into a position where they are forced to lose money on their property indefinitely. *See* 45 D.C.Code § 1523 (1981) (providing for "hardship" rent increases).

### B. *Previous Proceedings*

Named appellants seem to have raised some similar claims in previous proceedings before RAO and on appeal in the District of Columbia Court of Appeals. Because the preclusive effect of these past proceedings is an issue in this case, we will briefly review the history of those proceedings.

In the first case, begun in October 1978, two tenants complained to RAO that proposed rent increases violated provisions in their leases that forbade rent increases not authorized by the United States Department of Housing and Urban Development. RAO held for the tenants on January 26, 1979, and on December 14, 1979 RHC (*see* note 1 *supra*) affirmed. Appellants took their appeal to the District of Columbia Court of Appeals, which also affirmed. *Interstate General Corp. v. D.C. Rental Accommodations Comm'n (Interstate General I)*, 441 A.2d 252 (D.C.C.A.1982). Among the grounds urged by appellants for reversal in that case was the failure of RAO to give it adequate notice of the issues involved in the RAO hearing. *Id.* at 254 n. 2. Appellants also argued that the RAO decision was arbitrary and capricious and unsupported by substantial evidence.

The court rejected all of appellants' challenges in an opinion issued on January 7, 1982.

While *Interstate General I* was pending before RHC, tenants brought two other similar complaints before RAO in May and September 1979. RAO decided the second case (*Interstate General II*) in favor of the tenants on May 16, 1980. However, on May 23, 1980 RAO decided the third case (*Interstate General III*) in favor of appellants. Both cases were appealed to RHC.

RHC vacated RAO's decision in *Interstate General III* on March 4, 1981, evidently because the tape-recorded record of the RAO hearings in that case had been lost. Consequently, RHC ordered that a new hearing be held. The new hearing was held on April 14, 1982, and RAO this time reversed its position and held for the tenants. RHC affirmed the decision on October 7, 1982. Meanwhile, on May 18, 1981 RHC affirmed the decision against appellants in *Interstate General II*.

Appellants took an appeal from RHC's decision in *Interstate General II* to the District of Columbia Court of Appeals. On July 8, 1983 that court, in an unpublished memorandum opinion and judgment, affirmed the RHC decision against appellants. Among the issues presented to the court was appellants' claim that the RAO hearing examiner who initially decided the case "was forced by his supervisor to change his decision * * * after conferring with his supervisor." *Interstate General II*, D.C.C.A. No. 81–1231 (decided July 8, 1983), at 1 (*reproduced in* Exhibit A to appellees' brief). The court held that the evidence could be read "as showing that the examiner, after being advised of the Commission's previous order, changed his decision in a manner consistent with the doctrine of *stare decisis*. [Appellant's] right to due process was not violated." *Id.* at 2 (footnote omitted). On this basis the court affirmed the agency.

The District of Columbia Court of Appeals never reached the merits of *Interstate General III*. Although an appeal was taken from RHC's decision affirming

RAO's holding in favor of the tenants, appellants on July 22, 1983 asked the District of Columbia Court of Appeals to dismiss their appeal. On July 26, 1983 that court granted their motion.

### C. *The District Court Decision*

The District Court dismissed this action on July 19, 1983. The court held that Congress lodged exclusive jurisdiction over complaints of the kind asserted by appellants in the courts of the District of Columbia. In support of this conclusion the court pointed out that the District of Columbia Administrative Procedure Act provides that "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review thereof * * * upon filing in the District of Columbia Court of Appeals a written petition for review." 1 D.C.Code § 1510(a) (1981). In addition, the local rent control ordinances discussed above specifically provide for judicial review in the District of Columbia Court of Appeals of decisions of the Rental Housing Commission. *See* 45 D.C.Code § 1530 (1981). According to the District Court, appellants' claims were in substance claims for review of orders of the Rental Housing Commission and thus had to be brought in the local court system in accordance with these two ordinances.

The District Court bolstered its conclusion with what it believed was an independent basis for dismissal in this case: "the principle of comity." According to the District Court, this principle establishes that "it is undesirable" for a federal court to exercise its powers "since intervention in this dispute would unduly interfere with the legitimate functioning of the judicial and administrative processes of the District of Columbia. This case presents a peculiarly local controversy involving an expansive challenge to virtually every action by the RAO over almost a decade." Memorandum Opinion of the District Court in Civil Action No. 81–1598 filed July 19, 1983 (Dist.Ct.Op.) at 8–9 (*reproduced in* Appendix to appellants' brief). Therefore, the court concluded, "Resolution of this dispute rightfully belongs with the local courts of the District of Columbia." *Id.* at 9.

### II. ANALYSIS

In addition to the two independent grounds for dismissal advanced by the District Court (exclusive jurisdiction in the local courts and the principle of comity), appellees argue that the doctrines of claim preclusion (*res judicata*) and issue preclusion (collateral estoppel) barred appellants' claims and thus support the District Court's judgment. We discuss each of the three bases for the District Court's judgment in turn.

### A. *Exclusive Jurisdiction*

The District Court placed primary reliance on principles of exclusive jurisdiction when dismissing appellants' claim. As noted above, the District Court believed that the District of Columbia Administrative Procedure Act (DC APA), 1 D.C.Code § 1510 (1981) (enacted originally by Congress, Pub.L. No. 90–614, § 11, 82 STAT. 1209), indicated Congress' desire that jurisdiction over actions challenging rulings of the RHC should be in the District of Columbia Court of Appeals. When Congress establishes "a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C.Cir.1979); *accord Investment Co. Institute v. Board of Gov. of FRS*, 551 F.2d 1270, 1279–1280 (D.C.Cir.1977). In *Cheek v. Washington*, 333 F.Supp. 481, 484 (D.D.C.1971) (*per curiam*), a three-judge District Court held that the DC APA is such an allocation of jurisdiction to the District of Columbia Court of Appeals. The District Court in the case at bar believed that appellants were "requesting judicial review of decisions by administrative bodies of the District of Columbia * * *." Dist.Ct.Op. at 4. Therefore, according to the District Court, appellants' action fell

within the ambit of the DC APA's procedures for judicial review in the local courts, and the District Court accordingly remitted appellants to their local court remedy.

We hold that the District Court erred in reaching this conclusion. The claim that appellants improperly brought their case in federal court must be rejected for two reasons.

1. *The scope of appellants' challenge.* If the DC APA were indeed—as appellees and the District Court believed—a division of jurisdiction between the federal and local courts, it still would only establish exclusive jurisdiction over the cases "to which it applies." Thus the threshold question in this case is whether appellants' claims are within the scope of the DC APA at all. If those claims could not be brought in the judicial review proceeding established by the DC APA, then the exclusivity provisions of the statute are simply inapplicable. We hold that, for two independent though related reasons, appellants' claims extend beyond those cognizable under the DC APA.

■ First, appellants seek relief that seems not to be available to them under the judicial review procedures of the DC APA. The DC APA grants authority to the District of Columbia Court of Appeals on review of an administrative decision to "affirm, modify, or set aside the order or decision complained of, in whole or in part, and, if need be, to remand the case for further proceedings, as justice may require." 1 D.C.Code § 1510(a) (1981). Insofar as appellants seek a declaration that certain specific RAO decisions are invalid and an injunction against further enforcement of those particular decisions, the relief they seek appears to be roughly coextensive with that available under the local statute, and their action could therefore be seen as an attempt to circumvent the DC APA. But the gravamen of appellants' claim is that those entrusted with enforcing the local rent control laws intentionally sought—as a matter of local policy—to deprive landlords of their rights to due process ·of law, and that this intention was realized throughout the wide range of activities of RAO. If their charges were proven true, judicial review of RAO decisions on a case-by-case basis would be inadequate as a remedy; instead, appellants would perhaps be entitled to broader and more "structural" forms of relief, such as orders requiring the agency to modify its hiring practices, its procedures for conducting and recording hearings, its activities in "counseling" tenants, and other aspects of the agency's operation. Therefore, at least insofar as appellants seek—and, if their claims prove true, may be entitled to—these broader remedies, their claim is not one to which the DC APA applies. *See Silverman·v. Barry*, 727 F.2d 1121, 1123 (D.C.Cir.1984).

■ Second, appellants in this case attacked not merely specific decisions reached by RAO, but also a number of actions taken by agency officials that are relatively unrelated to the formal decisional process. For instance, their complaint includes charges that RAO deprived appellants of constitutional rights by "counseling" tenants to pursue claims in small claims court in order to harass landlords; this does not seem to be the kind of charge cognizable in a judicial review proceeding under the DC APA and thus also indicates that appellants' claims in federal court are not precluded by the exclusivity provisions of the DC APA.

2. *Congressional policies underlying Section 1983.* It is significant that appellants brought this action pursuant to 42 U.S.C. § 1983 (1982). In 1979 Congress extended Section 1983 to make it available as a remedy for deprivations of federal rights by officials acting under color of the laws of the District of Columbia. Pub.L. No. 96–170, § 1, 93 STAT. 1284 (1979). In amending Section 1983 Congress intended to put citizens of the District of Columbia on the same footing as citizens of the states. *See, e.g.,* H.R.Rep. No. 96–548, 96th Cong., 1st Sess. 1 (1979) (purpose of legislation is "to give citizens of the District of Columbia rights equal to those

of citizens in the states and territories of the United States"). Congress thus intended that federal jurisdiction should extend to vindicate the federal rights of citizens of the District of Columbia in the same way it extends to citizens of the states.

In determining whether the DC APA bars federal jurisdiction over appellants' attempt to vindicate their federal rights under Section 1983, the appropriate mode of analysis is to determine whether, if the District of Columbia were a state and the DC APA a state statute, a federal court would exercise jurisdiction over the case. When Congress acts as the local legislature for the District of Columbia and enacts legislation applicable only to the District of Columbia and tailored to meet specifically local needs, its enactments should—absent evidence of contrary congressional intent— be treated as local law, interacting with federal law as would the laws of the several states. *See, e.g., Sullivan v. Murphy,* 478 F.2d 938, 971–973 (D.C.Cir.), *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *cf.* 42 U.S.C. § 1983 (1982) ("For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."). We must therefore accord the DC APA no more weight than would be accorded a similar state statute. This analysis, however, easily disposes of the case. A state statute establishing that a federal Section 1983 plaintiff has a remedy available in state court (which is the effect of the relevant section of the DC APA) could not act to bar an otherwise appropriate action under Section 1983, for there is no requirement that plaintiffs in Section 1983 cases exhaust state remedies before bringing their suits in federal court. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Home Telephone & Telegraph*

*Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913). It follows that the DC APA is not a bar to appellants' attempt to bring this cause of action in federal court. To the extent that *Cheek v. Washington, supra,* establishes otherwise, it has been overtaken by Congress' action in extending Section 1983.

For the above reasons, we conclude that the local courts do not have exclusive jurisdiction over appellants' case and that the District Court erred in dismissing appellants' case on this ground.[3]

## B. *The Principle of Comity and* Younger *Abstention*

The District Court also held that the "principle of comity" requires dismissal of this case because "intervention in this dispute would unduly interfere with the legitimate functioning of the judicial and administrative processes of the District of Columbia." Dist.Ct.Op. at 8. Federal courts in general have the duty to adjudicate claims brought to them that are within their jurisdiction; there is no general principle that forbids federal courts from "interfering" in the processes of state and local courts when that "interference" is in reality the vindication of federal rights in cases within their jurisdiction. However, based on principles of equity—and in particular the principle that equity courts will not lightly enjoin criminal prosecutions in other courts, *see Douglas v. City of Jeannette,* 319 U.S. 157, 162–164, 63 S.Ct. 877, 880–881, 87 L.Ed. 1324 (1943)—the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny restrains federal courts from interfering in ongoing state judicial proceedings. It is presumably this doctrine on which the Dis-

---

**3.** The District Court also seemed to believe that the general rule that appellants must exhaust available and adequate administrative remedies before resorting to federal courts, *see McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), would also act as a bar to this action. *See* Dist.Ct.Op. at 7 n. *. However,

the general requirement of exhaustion of administrative remedies is not applicable in § 1983 cases. *See Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Silverman v. Barry,* 727 F.2d 1121, 1123 n. 3 (D.C.Cir.1984).

trict Court was relying in referring to the "principle of comity." [4]

In *Younger v. Harris* the Supreme Court held that, absent extraordinary circumstances, federal courts may not enjoin an ongoing state criminal proceeding. In subsequent cases this prohibition has been extended to some civil proceedings that are in the nature of enforcement actions. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil action to "abate" showing of obscene movies); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt proceedings); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (state action to recover welfare payments); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state action to gain custody of abused children). It has also been extended to cases in which the state proceeding was not pending at the time the federal action commenced, but in which the state action did begin before the federal action reached proceedings on the merits of the case. *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). However, all valid applications of *Younger* have in common the principle that "federal equitable intervention is not warranted if the federal plaintiff can secure a full and fair day in court on his constitutional claims by raising them by way of defense in a state enforcement proceeding which is already underway or is imminent anyway." P. BATOR, P. MISHKIN, D. SHAPIRO & H. WECHSLER, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 283 (1981 Supp.). The core idea is that the federal plaintiff should not be permitted to split an ongoing case by bringing what are in effect federal defenses to the state proceeding in federal court. Instead, given the obligation of state and local courts (no less than federal courts) to enforce the Constitution and federal laws, the federal plaintiff should be forced to raise his constitutional or other federal defenses to the state's action before the state or local court in which he is already a party.

■ This analysis is sufficient to demonstrate that *Younger* principles do not require dismissal of appellants' complaint, for *there are no ongoing proceedings in the local courts in which appellants could raise their federal constitutional claims.* When the District Court reached its decision in this case on July 18, 1983, proceedings in *Interstate General I* and *Interstate General II* had terminated in the District of Columbia Court of Appeals. Therefore, the only possible ground for *Younger* dismissal in this case would be if *Interstate General III* was the kind of local enforcement proceeding in which appellants could have had a full and fair opportunity to present their federal claims. But, as we noted above, appellants' claims are in a number of respects considerably broader than the claims they were able to assert in the proceedings in local courts or before RAO itself. And the relief they seek in this case is far broader than that which the local court could have granted in the administrative review proceeding. Therefore, the District Court erred in its alternative holding that this case should be dismissed on *Younger* grounds. There being no pending state enforcement proceedings that would have afforded appellants a full and fair opportunity to litigate their constitutional claims, the predicate for *Younger* abstention was simply absent in this case.[5]

**4.** This court has never decided whether the *Younger* doctrine is applicable to the federal courts in the District of Columbia. *See Pernell v. Southall Realty*, 416 U.S. 363, 368 n. 4, 94 S.Ct. 1723, 1726 n. 4, 40 L.Ed.2d 198 (1974); *Family Division Trial Lawyers v. Moultrie*, 725 F.2d 695, 701 n. 7 (D.C.Cir.1984); *Kaplan v. Hess*, 694 F.2d 847, 850 n. 2 (D.C.Cir.1982); *Campbell v. Magruder*, 580 F.2d 521, 525 (D.C. Cir.1978); *Utz v. Cullinane*, 520 F.2d 467, 472 n. 9 (D.C.Cir.1975); *Sullivan v. Murphy*, 478 F.2d 938, 960–964 (D.C.Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). We need not reach this issue in this case because, even assuming that *Younger* would be applicable with full force to the federal courts in the District of Columbia, we nonetheless find that *Younger* would not dictate dismissal of this case.

**5.** Appellees suggest that, even if the *Younger* doctrine does not apply to this case, the court should nonetheless refrain from exercising jurisdiction on the ground that this case presents "difficult questions of state law bearing on policy problems of substantial public import whose

*Cf. Sullivan v. Murphy, supra,* 478 F.2d at 961–962.

### C. *Preclusion Principles*

■ Appellees' final argument supporting dismissal was that appellants should be precluded by principles of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) from litigating this case in federal court. There can be no doubt that principles of preclusion apply in Section 1983 actions. *See Migra v. Warren City School Dist. Board of Educ.,* —— U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Appellees' argument is that appellants cannot assert certain of their claims in this case because they were the same claims litigated previously in the District of Columbia Court of Appeals; appellants would be unable to assert other claims because issues vital to favorable decision have already been litigated and necessarily decided against them in the local court cases. The District Court did not reach the preclusion issue in this case.

■ Appellees' argument appears to have considerable plausibility. To the extent that appellants seek to reverse specific decisions of RAO that appellants themselves have already unsuccessfully challenged in the local courts, this action is barred by principles of *res judicata.*

Moreover, to the extent that appellants— even while purporting not to challenge those particular decisions—seek to relitigate issues already decided by the local courts, this action is barred by principles of collateral estoppel. A perusal of the District of Columbia Court of Appeals' decision in *Interstate General I* indicates that at least some of the very claims being raised in this suit were in fact definitively rejected there. *See, e.g., Interstate General I, supra,* 441 A.2d at 254 n. 2 (rejecting claim that appellants did not in that case have notice of issues raised before RAO). Nonetheless, we decline to decide this case on the basis of preclusion principles. Application of the principles relied on by appellees will require careful briefing and argument by the parties focused on this issue. It may involve as well considerable delving into the records in *Interstate General I, II,* and *III.* Because we do not have the benefit of those records or of careful briefing and argument by both parties addressed to this specific point, we do not believe that we can adequately base a decision on whether to dismiss this case on preclusion principles. *Cf. Silverman v. Barry, supra,* 727 F.2d at 1123 n. 3 (similarly remanding so that District Court can make determination on preclusion issues).

### III. Conclusion

In this action appellants sought to mount a broad-based attack on the constitutionali-

importance transcends the result in the case * * at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *accord Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The mere sensitivity or importance of the state law questions in a case have never been sufficient in themselves to require a federal court to abstain on *Burford* grounds, *see Silverman v. Barry, supra* note 3, 727 F.2d at 1123–1124 n. 4; *Campbell v. Magruder, supra* note 4, 580 F.2d at 525. The *Burford* doctrine—which has never been applied to the District of Columbia—was designed to avoid federal intrusion into a complex state regulatory scheme at the behest of a plaintiff who argues that the substantive outcomes of the state administrative process are improper. In the *Burford* case itself the issue involved distribution of rights to pump oil from an oil field located underneath a number of different properties.

Given the limited supply of oil and the interdependent nature of the various landowners' rights, the federal court in granting relief to the federal plaintiffs would have necessarily adjudicated the rights of other landowners—not present in the federal court—and ultimately taken on itself the role reserved for the state administrative agency of establishing the amount of oil each landowner could pump. And it would have had to do this despite the fact that the federal question in the case was relatively insubstantial. Thus *Burford* was far from a case in which the federal plaintiffs raised substantial constitutional issues of the kind presented in this case. To invoke *Burford* merely because of the "sensitivity" of the local policies in this case or because the case involves a state bureaucracy would be contradicted by all of the examples of federal enforcement of federally-guaranteed civil rights in the great school desegregation and voting rights cases, among others.

ty of the practices and procedures used by the administrative agency charged with enforcing the local rent control laws. The District Court inappropriately applied principles of "exclusive jurisdiction" and *Younger* abstention to bar appellants' challenge. We hold here that the District Court erred in dismissing appellants' claims on these grounds. The doctrine of exclusive jurisdiction relied on by the District Court is applicable primarily within the federal court system when Congress has allocated jurisdiction to one branch of the federal judiciary rather than another. It has limited, if any, application to the federal courts when the statute purportedly allocating jurisdiction is a *local* statute that on its face merely allocates jurisdiction among the local courts. Especially given the extension of Section 1983 to the District of Columbia in 1979, the doctrine of exclusive jurisdiction has no application to this case. The *Younger* doctrine is inapplicable to this case for a far simpler reason: there is simply no ongoing state judicial proceeding of the sort that is a predicate for *Younger* abstention.

The genuine issue raised by this case concerns the effect of completed local court actions on subsequent actions brought by the same plaintiffs in federal court. It may well be that appellants' previous unsuccessful attempts to argue essentially identical claims before the District of Columbia Court of Appeals would require the District Court to dismiss this action. Unfortunately, we do not believe that we can fairly decide this issue on the record before us. We therefore remand to the District Court for further proceedings, including a determination of appellees' claims that principles of *res judicata* and collateral estoppel are a bar to appellants' action.

*Reversed and remanded.*