**3883 CONNECTICUT LLC, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**No. CIV.A. 00–2453(JR).**

United States District Court, District of Columbia.

Feb. 28, 2002.

---

Roger J. Marzulla, Nancie G. Marzulla, Marzulla & Marzulla, Washington, DC, for Plaintiff.

Bruce Edward Brennan, Andrew J. Saindon, Assistant Corporation Counsel, Washington, DC, for Defendants.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff is building a 168–unit apartment building on its property at 3883 Connecticut Avenue in the District of Columbia. From February through May 2000, plaintiff was granted the permits it needed to begin preparing the site for construction. Site preparation began on July 31, 2000. The next day, opponents of the project, Friends of Tilden Park, filed suit

in Superior Court for the District of Columbia seeking to enjoin further construction. That court issued a temporary restraining order. The TRO expired two days later, on August 3, 2000. Within a few hours of the TRO's expiration, the District of Columbia Department of Consumer and Regulatory Affairs (DCRA) issued a stop work order (SWO). On August 9, 2000, plaintiff appealed the SWO to the Administrator of the Building and Land Regulation Administration. The appeal was denied on August 11, 2000, on the stated rationale that the SWO was validly issued because of the risk that the preliminary permits may have been issued based on inaccurate site information on the Environmental Impact Screening Form (EISF) plaintiff had filed as part of its application for the building permits. On August 16, 2000, plaintiff submitted a revised EISF. The revision disclosed (for the first time) that mature trees are on the property, a stream runs near the property, and an adjacent building is listed on the National Register of Historic Places. On August 21, 2000, plaintiff further appealed the SWO to DCRA. There was no response to that further appeal, except that, on September 7, 2000, DCRA directed plaintiff to submit a detailed environmental report on several potential impacts of the project. Plaintiff complied.

Plaintiff filed this action on October 13, 2000, seeking rescission of the SWO. On November 2, 2000, after a hearing, I denied plaintiff's motion for a ·preliminary injunction. On November 22, 2000,[1] DCRA rescinded the SWO, mooting the demand for injunctive relief. On January 26, 2001, plaintiff amended its complaint, adding a demand for compensatory and punitive damages for the disruption of its project between August 3 and November 22, 2000. Now before the Court is defendants' motion to dismiss or for summary judgment.

*Jurisdiction*

The District's first argument for dismissal invokes the Burford abstention doctrine, which counsels against the exercise of federal court jurisdiction where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Defendants argue that this is a local land use case whose resolution requires an assessment of the scope of authority and discretion conferred upon District officials by the District's construction codes and Environmental Policy Act.

■ The *Burford* doctrine has received short shrift in this Circuit. "[S]ensitivity and the notion of localism alone do not provide a principled rationale for abstention where federal jurisdiction admittedly exists. Federal courts routinely decide local matters of great sensitivity and we are not convinced that abstention from a federal question case may be based on this rationale." *Silverman v. Barry,* 727 F.2d 1121, 1123 n. 4 (D.C.Cir.1984). Resolution of plaintiff's central claim—that the suspension of its permits deprived it of procedural due process—"will not require this court to intrude unduly into sensitive areas of local policy or regulation." *Dominion Cogen, D.C, Inc. v. District of Columbia,* 878 F.Supp. 258, 267 (D.D.C.1995) (retaining jurisdiction in case where plaintiffs claimed "that District officials improperly

---

1. *See* DCRA Letter to Francis Coen, development executive for Clark Realty Capital (Pl.'s Ex. K). Throughout its complaint and pleadings, plaintiff continually refers to the rescission date as November 27, 2000.

withheld building permits to which the plaintiffs were legally entitled"). Defendants' jurisdictional challenge fails.

### Procedural Due Process

■ The District next argues, in support of its motion to dismiss plaintiff's due process claim, that plaintiff failed to exhaust its administrative remedies, that the District followed the appropriate procedures, and that in any case plaintiff had no property interest in the preliminary building permits. Plaintiff has the better argument on the first two of those points. "[O]ne pursuing a procedural due process claim need not exhaust his local remedies." *Tri County Indus., Inc. v. District of Columbia,* 104 F.3d 455, 462 (D.C.Cir.1997). And the District's assertion that it followed the appropriate SWO procedures is suspect. At the Superior Court TRO hearing on August 1, 2000, the District represented that the construction site had been investigated and that the environmental concerns of the community group and claims of inaccuracies in the EISF were unfounded. Pl.'s Mem. Ex. C at 6. Two days later, it considered the "incomplete and/or incorrect information on plaintiff's original EISF" substantial enough to warrant issuance of the SWO. Defs.' Mem at 13. That chronology suggests that the reasons given for issuing the SWO were pretextual. *Cf. Tri County Indus.,* 104 F.3d at 460, 462.

On the third point, however, the District is correct: the permits the District issued to plaintiff were not building permits and did not confer property rights. In *Tri County Indus.,* 104 F.3d at 458, the Court of Appeals assumed, based on the concession of the District, that a building permit is a property right. The court rejected the proposition, however, "that an agency 'deprives' an applicant of 'property' whenever it backtracks on a prior favorable finding on one of [the many steps toward issuance of a building permit] independently of withdrawal of the permit itself." *Id.*

The work interrupted by the SWO in this case was authorized by a sheeting and shoring permit, an excavation permit, a permit to construct the foundation to grade level, a permit to underpin an adjoining property, and a permit to underpin and locate shoring at another adjoining property. None of those permits was a "prerequisite to construction" that stood "apart from the need for a building permit." *Id.* Rather, they were some of the "many steps toward issuance of a building permit." *Id.* The D.C. regulations do provide, for instance, that something called a "building permit" is needed for underpinning, and each of plaintiff's underpinning permits is labeled "building permit." D.C. Mun. Regs. tit. 12A, § 107.2.1 (2001); Pl.'s Response to Ord. (Exs. 4–5). To regard these five permits as anything but steps toward issuance of a building permit, however, is to elevate label over substance. The real building permit was not issued until November 27, 2000, after the rescission of the SWO on November 22, 2000. Decl. of Francis Coen of 9/28/01 at ¶ 10 (referring to Ex. 6 of Pl.'s Response to Ord.).

■ To explain this conclusion, it is necessary to step through the due process analysis given shorthand treatment in the Court of Appeals' *Tri County* decision (recall that the District conceded that the building permit in that case conferred a property right). "Individuals are entitled to due process ... only if they have a constitutionally protected property interest." *Washington Legal Clinic for the Homeless v. Barry,* 107 F.3d 32, 36 (D.C.Cir.1997) (citing *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 260, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). To have a property interest in a government benefit, "a person clearly must have more than an

abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. An entitlement is derived from " 'an independent source such as state law,' i.e., statutes or regulations 'that secure certain benefits and that support claims of entitlement to those benefits.' " *Washington Legal Clinic for the Homeless,* 107 F.3d at 36 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701).

■ A statute may create a constitutionally protected property interest, if the statute or its implementing regulations "place substantive limitations on official discretion." *Id.* (internal citations omitted). "Statutes or regulations limit official discretion if they contain explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations substantive predicates' are present, a particular outcome must follow." *Id.* (internal citations omitted). In the land-use context, "whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold *its* approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest." *Gardner v. City of Baltimore,* 969 F.2d 63, 68 (4th Cir.1992) (emphasis in original) (applying to substantive due process challenge).

■ The parties say that the five preliminary permits in this case were issued under sections 107 and 108 of title 12 of the D.C. municipal regulations. The District of Columbia Court of Appeals has suggested that permits for excavation, sheeting, and shoring are issued under § 108.2.[2] *TACPEC v. District of Columbia Bd. of Zoning Adjustment,* 550 A.2d 331, 333–34 n. 5 (D.C.1988). Under § 108.2, "the code official is authorized to issue a partial permit for the construction of foundations or any other part of a building or structure before the entire plans and specifications for the whole building or structure have been submitted, provided adequate information and detailed statements have been filed complying with all pertinent requirements of the Construction Codes." D.C. Mun. Regs. tit. 12A, § 108.2 (2001). The language of this section is discretionary. *Washington Legal Clinic for the Homeless,* 107 F.3d at 36; *see also Spence v. Zimmerman,* 873 F.2d 256, 259–60 (11th Cir.1989) (citing *Sullivan v. Town of Salem,* 805 F.2d 81 (2d Cir. 1986) (no legitimate entitlement where statutory authority to have subdivision roads accepted is couched in discretionary rather than mandatory language)).

Moreover, as § 108.2 makes very clear, the issuance of a partial permit comes with no promises: "Issuance of a partial permit by the code official does not constitute assurance that a permit for the entire structure will be granted. The holder of such partial permit for the foundations or

2. The *TACPEC* opinion refers to the 1986 version of section 108.2: "The Director may approve the issuance of a permit for the excavation, or excavation and foundation, for a building or structure in advance of its approval for [sic] permit as a whole, provided the complete plans and such specifications as the Director may determine as necessary for the structure have been submitted, full zoning approval obtained, and all other pertinent information has been submitted or obtained as a basis for such partial approval. The holder of such permit shall proceed at his own risk and without assurance that a permit for the entire structure will be granted." D.C. Mun. Regs. tit. 12, § 108.2 (May 1986) (Provisional Edition) (on file at the library of the District of Columbia Superior Court). The current version of the section appears to broaden the types of partial permits arising under the section.

other part of a building or structure will proceed with the building operation at the *holder's own risk* ... and without assurance that a permit for the entire structure will be granted." (Emphasis added).

One argument not completely foreclosed by the discretionary language of § 108.2 and the "proceed at your own risk" language of the regulation is that the issuance of a sheeting and shoring permit (for example) confers the right to do at least *the sheeting and shoring* without unlawful interference, even if it confers no right to the final building permit. But that argument ignores the Court of Appeal's language in *Tri County* about "steps toward issuance of a building permit." 104 F.3d at 458. And, to the extent that argument involves the Court in each incremental detail of the relationship between a builder and the government, it may well exceed even the broad boundaries of appropriate federal court action sanctioned by *Silverman,* 727 F.2d at 1123 n. 4.

#### Other Claims

 It is not clear whether plaintiff has asserted a substantive due process claim.[3] If it has, the claim fails. As the Court of Appeals said in *Tri County Indus.,* "our clear intent in *Silverman* was to confine the concept of substantive due process, itself oxymoronic, to actions that in their totality are genuinely drastic.... [U]nless the victim of government imposition has pushed its local remedies to the hilt, it ordinarily will not be able to show the necessary substantiality." 104 F.3d at 459. Plaintiff failed to appeal the issuance of the SWO to the Board of Appeals and Review as permitted under section 122.1.2 of title 12A of the D.C. municipal regulations and clearly did not "push[ ] its local remedies to the hilt."

---

3. Plaintiff's amended complaint alleges only "deprivation of property without due process of law," Am. Compl. at 7 (first cause of ac-

Plaintiff's Equal Protection claim, that the District "appl[ied] the requirements of the DCEPA to this project alone," is premature. Am. Compl. ¶ 31. The District never actually required an Environment Impact Statement from plaintiff.

There is no need to deal with Carlynn Fuller's assertion of qualified immunity or with plaintiff's claim for punitive damages. The District's motion for summary judgment will be granted.

An appropriate order accompanies this memorandum.

#### ORDER

For the reasons set forth in the accompanying memorandum, defendants' motion for summary judgment [# 20] is **granted**.

---

tion), and plaintiff does not appear in its memorandum to have responded to defendants' substantive due process arguments.