**DOMINION COGEN, D.C., INC., et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

C.A. No. 93–2267 (RCL).

United States District Court, District of Columbia.

March 1, 1995.

William F. Young, Mark B. Bierbower, Hunton & Williams, Richmond, VA, for plaintiffs.

Thomas L. Koger, Office of Corp. Counsel, Washington, DC, for defendants.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

This lawsuit arises out of the lengthy and ultimately fruitless efforts of plaintiffs to secure the necessary permits, zoning approvals, and regulatory clearances from various agencies of the District of Columbia government in order to begin construction of a 56 megawatt cogeneration facility on the campus of Georgetown University. Plaintiffs allege that various representatives of the D.C. city government engaged in a concerted effort to improperly prevent plaintiffs from building and operating this facility. The case comes before the court on the joint motion of all defendants to dismiss either for failure to state a claim or pursuant to the court's discretionary authority under the *Burford* abstention doctrine. In addition, three D.C. City Council members, who are being sued in their official capacities, move to dismiss on the grounds of legislative immunity. Finally, the parties have filed several motions concerning plaintiffs' requested depositions and discovery of assertedly privileged documents from the defendants. For the reasons set forth below, the City Council members' motion to dismiss will be granted in part and denied in part as to defendants Ray and Evans, and granted as to defendant Nathanson. The joint motion of all defendants to dismiss for failure to state a claim or pursuant to the abstention doctrine will be denied. Defendants' motion for a protective order regarding certain deposition questions will also be denied, as will defendant's motion for a stay of discovery. Finally, plaintiffs' motion to compel will be denied without prejudice.

I. Factual Background

Plaintiffs are a group of companies which sought to construct and operate a steam and electric cogeneration plant [1] on the campus of Georgetown University, in Washington, D.C. After being selected by Georgetown Univer-

---

1. "Cogeneration" refers to a process by which a single plant generates and distributes both steam and electricity to consumers.

sity to construct the facility, plaintiffs began a lengthy regulatory approval process. Plaintiffs' complaint describes the numerous administrative hurdles which the proposed project was required to surmount in order to obtain permission from the D.C. city government to proceed with construction of the facility. Plaintiffs contend that they dutifully complied with these myriad requirements,[2] and that by the summer of 1993, the only thing left to be done was for the Department of Consumer and Regulatory Affairs ("DCRA") to issue building permits for the project. However, the director of the DCRA, Hampton Cross, refused to issue these permits, citing concerns over the possible health effects of electro-magnetic fields ("EMF") which would be generated by the power lines carrying plaintiffs' electricity. According to the plaintiffs, EMF issues had been fully investigated by several D.C. regulatory agencies, and these agencies had determined that projected EMF levels posed no public health risk. Thus, plaintiffs contend that the decision to withhold the building permits was not motivated by a good faith concern on Mr. Cross's part that the project might present a health threat, but rather was the result of a politically motivated and illegitimate scheme to kill the Dominion Cogen project. Plaintiffs have filed suit against the District of Columbia and various D.C. government officials including, among others, former Mayor Kelly and City Council members Ray, Nathanson, and Evans. Plaintiffs' suit alleges violation of due process, unconstitutional impairment of contracts, and tortious interference with contractual and economic relations.

## II. The Motions to Dismiss

 When assessing a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in favor of the plaintiff. *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, the plaintiff must be

given every favorable inference that may be drawn from his allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint should be dismissed only if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987); *Phillips,* 591 F.2d at 968. With respect to plaintiff's motion to dismiss pursuant to the *Burford* abstention doctrine, the court notes at the outset that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

## A. Legislative Immunity

 The City Council member defendants ("Council members"), who are being sued in their official capacities as legislators of the District of Columbia, move to dismiss plaintiffs' claims against them on the grounds that these claims are barred by the District's "Speech or Debate" statute. D.C.Code Ann. § 1–223 (1992). This statute provides that "[f]or any speech or debate made in the course of their legislative duties, the members of the Council shall not be questioned in any other place." *Id.* The legislative history and the case law interpreting this statute make clear that it is modelled on the Speech or Debate Clause of the United States Constitution, and that the statute was intended to be interpreted liberally, so as to protect " 'genuine legislative functions ... which are exercised beyond the mere confines of the Council Chambers or a committee meeting place.' " *Gross v. Winter,* 876 F.2d 165, 174 (D.C.Cir.1989) (quoting *Report on Bill No. 1– 34, "Legislative Privilege Act of 1975," Comm. on the Judiciary & Criminal Law Council of the District of Columbia* 1 (Dec. 4, 1975)). However, the scope of this immunity only extends to conduct which is within the legislative sphere. Council members are not immune from liability for acts which are not taken in their "legislative capacity." *Id.* at

---

**2.** Plaintiffs allege that the project was actually subjected to several unnecessarily duplicative review requirements which were both costly and unnecessary, but with which the plaintiffs nevertheless complied.

173. Because the Council member defendants may only be held liable for conduct which was outside the legislative sphere, the court must closely scrutinize the complaint in order to determine which, if any, of plaintiffs' allegations describe such conduct.

Plaintiffs allege that Council members Ray, Nathanson, and Evans took a variety of steps to prevent the Dominion Cogen project from going forward. Allegations concerning the conduct of these Council members consist of the following:[3]

1. Ray, Nathanson, and Evans "improperly pressured relevant agencies to delay issuance of permits and to demand new, redundant regulatory reviews without any basis in law or fact." Compl. ¶ 25.

2. On February 4, 1993, Ray "sent a letter to Defendant Mayor Kelly requesting delay of the project." Compl. ¶ 31.

3. Ray "convened a D.C. Council public hearing on DCRA's budget and attacked the project. Defendant Ray improperly utilized the hearing to exert political pressure on DCRA to deny issuance of building permits to the Project.... During the hearing, Defendant Ray made material misstatements concerning the Project and specifically requested the DCRA to delay issuance of the Project's building permits." Compl. ¶ 33.

4. Ray "noticed public 'oversight' hearings on DCRA in order to keep up pressure on DCRA and its officials to deny and delay necessary project permits." Compl. ¶ 37.

5. Ray "introduced before the D.C. Council legislation specifically designed to 'declare an emergency' and retroactively terminate the Project." Compl. ¶ 41.

6. Ray and Nathanson convened another public oversight hearing "ostensibly to review DCRA but in fact intended to provide a public forum for Defendants' continued false and misleading statements ... [and] to exert political pressure for more regulatory delay. During the hearing, Defendant Ray chastised the DCRA for not holding up approvals to which the project was legally entitled and directed Defendant Cross to delay the project." Compl. ¶ 42.

7. At a public hearing held by the DCRA, Evans "stated to representatives of the Project: 'Let me make one thing clear—the project will be killed, it will not go forward.' After the hearing, Defendant Evans stated to a representative of the Project that 'the facts do not matter, it's politics, and we need votes.'" Compl. ¶ 47.

8. Evans, Ray, and Nathanson introduced emergency legislation in the D.C. Council "specifically designed to prohibit the issuance of the building permits to which the Project was legally entitled." Compl. ¶ 49.

9. Ray summoned the director of the DCRA, Hampton Cross, to his Council offices; the same day, the DCRA issued a decision signed by Cross suspending processing of plaintiffs' building permit application "indefinitely." Compl. ¶ 50.

■ Without necessarily admitting the truth of plaintiffs' allegations, the Council members contend that even if they did engage in the conduct alleged by the plaintiffs, all such conduct would be legislative in nature and therefore immune from suit.

■ It is clear that the District's Speech or Debate statute clothes D.C. City Council members with immunity from lawsuits—including § 1983 claims—for conduct undertaken in their legislative capacities. *Gross*, 876 F.2d at 169. Furthermore, the case law interpreting the federal Speech or Debate Clause (which both the parties and the court agree is pertinent in construing the

---

**3.** At various points throughout the complaint, plaintiffs refer to the conduct of the defendants collectively, without specifying whether *all* or only some of the defendants engaged in the conduct alleged. For the purposes of this motion, the court assumes that where plaintiffs assert the *Council member* defendants themselves engaged in particular conduct, plaintiffs have so-specified, either in their complaint or in their supporting memoranda.

District's analogous statute) makes clear that it is not just actual speech or debate on the floor of the legislative chamber which is protected. *See United States v. Johnson,* 383 U.S. 169, 180, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1965) (holding that "the legislative privilege will be read broadly to effectuate its purposes"). Rather, the protection extends to activity which is "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters" within their jurisdiction. *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1971). Among these activities is the acquiring of information, an activity that is a " 'necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that [legislators] are able to discharge their duties properly.' " *McSurely v. McClellan,* 553 F.2d 1277, 1286–87 (D.C.Cir.1976), *cert granted,* 434 U.S. 888, 98 S.Ct. 260, 54 L.Ed.2d 173 (1977) *and cert. dismissed,* 438 U.S. 189, 98 S.Ct. 3116, 57 L.Ed.2d 704 (1978) (quoting Robert J. Reinstein & Harvey A. Silverglate, *Legislative Privilege and the Separation of Powers,* 86 Harv.L.Rev. 1113, 1154 (1973)).

Thus, it is clear that the bulk of the conduct alleged in the complaint falls within the scope of legislative immunity. Of the numbered paragraphs above, only paragraphs two, seven, and nine set forth activity arguably outside the legislative scope. Paragraph one reveals no specific conduct, but rather relies on the conclusory phrase "improperly pressured." Paragraphs three, four, and six involve Council members' decisions to hold public hearings; such hearings represent a well-established information-gathering tool frequently employed by the legislative branch. Paragraphs five and eight deal with the introduction of legislation, an activity which can be described with some confidence as falling within the "legislative sphere."

The conduct set forth in paragraph seven is somewhat ambiguous. On the one hand, a public hearing of the DCRA is not a legislative forum. The DCRA is an administrative agency of the executive branch, and thus the public statements of a City Council member at such a meeting would not constitute legislative activity. On the other hand, plaintiffs' complaint alleges that Council member Evans' statements were directed to the plaintiffs, not to members of the DCRA or the public in general. The private expression of these sentiments to representatives of the project would itself be neither actionable nor necessarily improper. Thus, in their amended complaint plaintiffs shall specify whether Council member Evans' comments at the DCRA hearing were private remarks directed to the plaintiffs only, or instead were intended to reach representatives of the DCRA and the public.

■ With respect to paragraphs two and nine, the court finds that plaintiffs have at least raised a question of fact as to whether Council member Ray acted outside of the legislative sphere. Plaintiffs maintain that their successful compliance with the District's numerous regulatory hurdles meant that they were legally entitled to have the DCRA issue the building permits. To the extent that the complaint alleges that Council member Ray sought to interfere with this process by using his influence to cajole or intimidate members of the executive branch into withholding the permits, such acts would not fall within the legitimate scope of legislative activity. The Supreme Court has noted that legislators "are constantly in touch with the Executive Branch of the Government and with the administrative agencies—they may cajole and exhort with respect to the administration of a federal statute—*but such conduct, though generally done, is not protected legislative activity.*" *Gravel,* 408 U.S. at 625, 92 S.Ct. at 2627 (emphasis added). The conduct described in paragraphs two and nine above at least raises a fact issue as to whether Council member Ray acted outside of the legislative sphere by seeking to influence members of the executive branch with respect to their decision not to issue the building permits.

In light of the foregoing, plaintiffs' complaint will be dismissed as to Council member Nathanson. As to Council member Ev-

ans, all of the allegations in the complaint will be dismissed except for those concerning his comments at the public hearing held by the DCRA on September 9, 1993.[4] With regard to Council member Ray, the allegations in the complaint will be dismissed except insofar as they concern 1) the February 4, 1993, letter from Ray to Mayor Kelly, Compl. ¶ 31; and 2) the meeting between Ray and DCRA Director Cross, Compl. ¶ 50.[5]

### B. Failure to State a Claim

 In addition to the Council members' motion to dismiss on grounds of legislative immunity, all defendants contend that, under the law in this circuit, plaintiffs' complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). There is no question that a cause of action for violation of substantive due process exists where a party has been injured by the government's deliberate disregard of fundamental legal processes. On the other hand, as the Sixth Circuit recently noted, "[t]he lack of uniformity among the circuits in dealing with zoning cases of the arbitrary and capricious substantive due process category is remarkable." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217, 1217–19 (6th Cir.1992) (collecting and discussing the case law in each of the circuits). The D.C. Circuit has articulated the standard this way:

> To succeed in a § 1983 suit for damages for a substantive due process ... violation, a plaintiff must at least show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities. Only a substantial infringement of state law prompted by personal or group ani-

mus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983.

*Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C.Cir.) *cert. denied* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988) ("*Silverman II*").

The plaintiff in *Silverman II* was the owner of an apartment building who had attempted to convert his apartments to condominiums during an inadvertent "window of opportunity" which existed between the expiration and reenactment of legislation establishing a moratorium on such conversions. The agency responsible for processing the conversion application failed to do so within the nine day gap period, and plaintiff was therefore unsuccessful in effecting the conversion. *Id.* at 1074–79. Plaintiff then filed suit against the District, alleging, *inter alia*, a violation of his constitutional right to due process. The district court attributed the agency's failure to process the plaintiff's application to "confusion" brought on by the large volume of conversion applications and by the fact that the District was, at the time, "'going through a period during which the conversions ... were to be done differently under D.C. law.'" *Id.* at 1080 (quoting *Silverman v. Barry*, No. 81–0394 (D.D.C. filed Aug. 22, 1986) (Findings of Fact and Conclusions of Law)). The court of appeals agreed with this characterization and, although it made a point to note that "we not do say that the District's actions were ideal," the court concluded that the District's handling of the

4. In deciding a motion to dismiss, the court must give the plaintiff every favorable inference that may be drawn from his factual allegations. Here, it is fair to infer that Council member Evans' remarks at the DCRA hearing were directed not only to the plaintiffs, as alleged, but to others present as well. If the remarks were directed only to the plaintiffs, however, Council member Evans will be dismissed from the suit altogether. The court trusts that this question will be clarified in plaintiffs' amended complaint.

5. The question of whether the City Council members (sued in their official capacities) are proper defendants in this case warrants a brief discussion here. A suit against a public official in his official capacity is simply a suit against the gov-

ernment entity which he represents. Thus, any money damages awarded in this case will be the responsibility of the D.C. government, and not of Council members Ray or Evans (Nathanson having been dismissed). Because any improper acts committed by the City Council members will be attributed to the District for liability purposes, and because no injunctive relief has been requested by the plaintiffs, one might wonder whether there is any point at all in specifically naming the Council members as defendants. Nevertheless, so far as the parties' filings and this court's research reveals, there is no reason the plaintiffs may not name particular City council members in their official capacities, if they so choose.

plaintiff's application did not rise to the level of a constitutional violation. *Id.*

The facts alleged by plaintiffs in the present case are far different. Here, plaintiffs allege neither mere sloth nor incompetence, but rather a concerted effort on the part of various D.C. officials to undermine and subvert plaintiffs' project. Under remarkably similar facts, the court in *Bello v. Walker*, 840 F.2d 1124, 1129 (3rd Cir.) *cert. denied* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107, *and cert. denied* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988), held that

> [t]he plaintiffs in this case presented evidence from which a fact finder could reasonably conclude that certain council members, acting in their capacity as officers of the municipality improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits. These actions can have no relationship to any legitimate governmental objective, and if proven, are sufficient to establish a substantive due process violation actionable under section 1983.

The court finds the *Bello* court's analysis of the due process issue germane to the facts of the present case and fully consistent with the general rule of this circuit, articulated in *Silverman II*. As discussed above, *Silverman II* requires a showing of "grave unfairness in the discharge of legal responsibilities" which amounts to a "deliberate flouting of the law that trammels significant personal or property rights." *Silverman II*, 845 F.2d at 1080. Plaintiffs' contentions that they had complied with all of the necessary regulatory requirements, that they were legally entitled to a building permit, and that this permit was withheld as a result of improper and politically motivated conduct on the part of the defendants more than satisfies the due process standard set forth in *Silverman II*.[6]

## C. Abstention

 Defendants argue that even if the court finds that plaintiffs' complaint does state a cause of action, the court should nevertheless dismiss the case pursuant to the *Burford* abstention doctrine.[7] This doctrine holds that federal courts should avoid interfering with issues involving complex and sensitive areas of state policy. The Supreme Court has described *Burford* abstention in the following way:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct.

---

6. The court also notes that defendants have moved to dismiss plaintiffs' claims for punitive damages on the grounds that punitive damages are unavailable against the District of Columbia as a matter of law. Whether punitive damages are available against the District absent express statutory authority appears to be unsettled. The leading D.C. Court of Appeals case states that punitive damages are not available against the District "absent extraordinary circumstances." *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C.App.1975). There has not been sufficient discovery yet to determine whether the type of "extraordinary circumstances" which might support a punitive damages award exist in this case; accordingly, resolution of this issue would be premature at this time.

The defendants also move to dismiss Count II of plaintiffs' complaint, which alleges unconstitu-

tional impairment of contracts. The extent of defendants' argument on this issue consists of the following sentence: "Since the suspension of Plaintiffs' applications is constitutionally valid, neither the suspension nor the process resulting in it unconstitutionally impaired any contract to which Plaintiffs were parties." Not only is this argument circular, the court has rejected its minor premise as well. The court will defer ruling on this particular question until such a time as it has received adequate briefing from the parties.

Finally, because the court has retained jurisdiction over the plaintiffs' § 1983 claims, defendants have not offered any grounds for dismissing plaintiffs' pendent common-law claims.

7. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

2506, 2514, 105 L.Ed.2d 298 (1989) (internal quotations omitted). The jurisprudence surrounding the *Burford* abstention doctrine is notable neither for its clarity nor for its consistency. Nevertheless, it is clear that there are some circumstances under which a federal court should invoke the doctrine in order to avoid intruding into particularly sensitive areas of state regulatory policy. The instant case does not, however, present such an occasion.

*Burford* abstention has been the subject of very few cases in this circuit. As far as the parties' and this court's research reveals, the doctrine has been discussed in only three opinions of the Court of Appeals for the District of Columbia Circuit. In *Campbell v. McGruder,* 580 F.2d 521, 525 (D.C.Cir.1978), the court found that none of the accepted abstention doctrines, including *Burford* abstention, were applicable to a class action prisoners' suit filed against the District of Columbia.

*Silverman v. Barry,* 727 F.2d 1121 (D.C.Cir.1984), *cert. denied* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988) ("*Silverman I*"), was a predecessor case to *Silverman II,* discussed above. In *Silverman I,* the district court had dismissed the plaintiff's suit pursuant to 28 U.S.C. §§ 1331 and 1343, on the grounds that it did not raise a substantial constitutional question. The court of appeals reversed this dismissal, finding that the plaintiff's *allegations* (namely, that the executive branch of the D.C. government had arbitrarily attempted to rescind rights guaranteed by the legislative branch) did state a nonfrivolous due process claim. *Id.* In dismissing the case on jurisdictional grounds, the district court had also noted that abstention was warranted due to the local nature of the issues involved. Judge Bork rejected this notion and expressed his hostility to the *Burford* abstention doctrine: "[S]ensitivity and the notion of localism alone do not provide a principled rationale for abstention where federal jurisdiction admittedly exists. Federal courts routinely decide local matters of great sensitivity and we are not convinced that abstention from a federal question case may be based on this rationale." *Id.* at 1124 n. 4.

The only other discussion of *Burford* abstention by the D.C. Circuit appears in *District Properties Assocs. v. District of Columbia,* 743 F.2d 21 (D.C.Cir.1984). In *District Properties,* the district court had dismissed a due process case involving the administration of the District's rent control laws both on the grounds that the local courts enjoyed exclusive jurisdiction and the grounds that principles of "comity" dictated that the federal courts not intervene in this area. In rejecting this holding, the court of appeals noted that the *Burford* doctrine had never been applied in the District of Columbia. The court went on to express the view that "[t]o invoke *Burford* merely because of the 'sensitivity' of the local policies in this case or because the case involves a state bureaucracy would be contradicted by all of the examples of federal enforcement of federally-guaranteed civil rights in the great school desegregation and voting rights cases, among others." *Id.* at 29 n. 5. Obviously, the *Burford* doctrine has not aroused a great deal of enthusiasm in this circuit.

In favor of abstention, the defendants rely primarily on the recent holding of the Fourth Circuit in *Pomponio v. Fauquier County Bd. of Supervisors,* 21 F.3d 1319 (4th Cir.) (en banc), *cert. denied* — U.S. ——, 115 S.Ct. 192, 130 L.Ed.2d 125 (1994). *Pomponio* involved a § 1983 due process claim by a land developer who alleged that county agencies and officials had improperly withheld necessary zoning approvals in an effort to thwart his plans to build a subdivision on land he owned. The court described the plaintiff's suit this way: "Pomponio's argument boils down to an assertion that his plan complied with the zoning law, and the local authorities wrongfully disapproved of his plan by misapplying the laws and by abusing their authority in the decision-making process." *Id.* at 1328. Reviewing its abstention decisions in the land use context, the court noted that "[v]irtually all of these cases, when stripped of the cloak of their federal constitutional claims, are state law cases. The federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes, or laws that are the bases for the plaintiffs' federal claims." *Id.* at 1326. Accordingly, the court held that

"absent unusual circumstances, a district court should abstain under the *Burford* doctrine from exercising jurisdiction in cases arising solely out of state or local zoning or land use law, despite attempts to disguise the issues as federal claims." *Id.* at 1327.

Although *Pomponio* does not bind the courts of this circuit, it is a strong, well-reasoned opinion, and one that would certainly give this court pause were it not distinguishable on its facts. There is a crucial difference, however, between the plaintiff's allegations in *Pomponio* and those in the instant case. *Pomponio* involved a dispute between Arthur Pomponio, a real estate developer who sought to subdivide his property into numerous lots (thereby maximizing the number of houses he could build on the land), and a county planning commission which rejected Pomponio's plan on the grounds that it violated several county zoning ordinances. In his § 1983 due process suit, Pomponio alleged that the decision to reject his plan was made in bad faith, and not on the basis of any genuine belief that the plan in fact ran afoul of any zoning laws. The court of appeals characterized the suit as "no more than a difference of opinion in this garden variety zoning dispute," *id.* at 1322, and found abstention under *Burford* to be appropriate. *Id.* at 1328. Significantly, the court noted that "cases involving questions of state and local land use and zoning law are a classic example of situations in which the exercise of federal review ... would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 1327 (internal quotations omitted).

Resolution of the plaintiffs' claims in the instant case, by contrast, will not involve "disruptive" federal intrusion into a sensitive area of local land use law. The record in this case reveals that the plaintiffs' project had been reviewed—more than once, in some cases—by numerous D.C. regulatory agencies. Plaintiffs claim that the project had been approved at every level of review and that the only remaining step was for the DCRA to issue building permits. Plaintiffs claim, and indeed defendants' own filings demonstrate, that the DCRA *must* issue a

building permit when the Director is " 'satisfied that the proposed work conforms to the requirements of the construction Codes and all applicable laws, rules and regulations.' " Defs.' Mem.Supp.M.Dis. at 14 (quoting 12 D.C.M.R. § 112.1 (1992)). The statements of counsel at oral argument further persuade the court that the narrow question presented by this case is whether plaintiffs were improperly denied building permits to which they were legally entitled, and which District officials had extremely limited discretion to withhold. Thus, the court agrees with plaintiffs that this case does not present the type of complex zoning or land use issues which occasionally motivate federal courts to invoke the *Burford* abstention doctrine. Resolution of the plaintiffs' fundamental allegation—namely, that District officials improperly withheld building permits to which the plaintiffs were legally entitled—will not require this court to intrude unduly into sensitive areas of local policy or regulation. Consequently, defendants' motion to dismiss pursuant to the *Burford* abstention doctrine will be denied.

## III. Discovery

In addition to the defendants' motions to dismiss, the parties have filed various motions relating to discovery of assertedly privileged materials. Specifically, plaintiffs have filed a motion to compel production of certain documents alleged to be in the possession of the Council member defendants; defendants have opposed this motion and filed a motion for an order staying discovery until the privilege issues are resolved. Defendants have also filed a motion for a protective order precluding plaintiffs from inquiring in depositions into deliberative thought processes of certain executive branch officials. The court will address these motions in turn.

### A. Discovery Motions Regarding Legislative Immunity

Plaintiffs seek a ruling from this court compelling the defendant Council members to produce, in essence, all documents in their possession which relate to the Dominion Cogen project. In light of the court's resolution of the legislative immunity issue, such a re-

quest is obviously overbroad. First, the court has dismissed Council member Nathanson from the suit; accordingly, Council member Nathanson need not accede to plaintiffs' discovery requests. Second, with regard to Council members Ray and Evans, the court has determined that only certain specific acts of these defendants were arguably outside of the legislative sphere. Thus defendants shall hone their Interrogatories to request production of documents related to these acts only.[8]

### B. Deliberative Processes of Executive Officials

■ Plaintiffs have noticed the deposition of various executive branch officials who the plaintiffs believe had some role in deciding to withhold the building permits from plaintiffs' project. Defendants maintain that the so-called "deliberative process" privilege precludes plaintiffs from inquiring into recommendations, advice, or other communications or thoughts these individuals may have offered in connection with plaintiffs' project.

■ The deliberative process privilege is a qualified rather than absolute privilege. The validity of such a privilege may depend upon "a balance of the public interest in nondisclosure with the need for the information as evidence." *United States v. American Telephone and Telegraph Co.,* 524 F.Supp. 1381, 1386 n. 14 (D.D.C.1981). Furthermore, "[a]n exception to the general thought-process rule is made where there are allegations of misconduct or misbehavior." *Id.* at 1389. *See also Dept. of Economic Development v. Arthur Anderson,* 139 F.R.D. 594, 596 (S.D.N.Y.1991) (holding that the deliberative process privilege is inapplicable where deliberations of government personnel are directly in issue).

· Here, the plaintiffs allege that they were legally entitled to the issuance of building permits which were "indefinitely suspended" by the defendants. Plaintiffs further allege

that the decision not to issue the permits was based on illegitimate political motives, and not by a good faith belief on the part of the defendants that serious concerns regarding potential public health risks remained unresolved. As such, these allegations do raise questions of governmental misconduct and place the deliberative process itself directly in issue. Therefore, defendants' motion for a protective order will be denied.[9]

### IV. Conclusion

For the reasons set forth herein, the City Council members' motion to dismiss will be granted in part and denied in part as to defendants Ray and Evans, and granted as to defendant Nathanson. Plaintiffs shall file an amended complaint reflecting the court's resolution of the City council members' motion to dismiss. The joint motion of all defendants to dismiss for failure to state a claim or pursuant to this court's discretion under the abstention doctrine will be denied. With respect to the discovery motions, defendants' request for a protective order regarding certain deposition questions will be denied, as will defendant's motion for a stay of discovery. Finally, plaintiffs' motion to compel will be denied without prejudice to file a new motion once plaintiffs have honed their discovery requests in accordance with this opinion. A separate Order shall issue this date.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1. Council member Nathanson's motion to dismiss is GRANTED, and Council member Nathanson is hereby DISMISSED from this action.

2. The motion to dismiss of Council members Evans and Ray is GRANTED in part

---

8. In the event defendants choose to assert a privilege to any of plaintiffs' new discovery requests, plaintiffs shall provide a proper privilege index. This index shall be compiled by an attorney who has *personally* reviewed the documents in question, and not on the basis of the representations of third parties concerning the contents of those documents.

9. Obviously, if defendants believe that particular deposition questions seek genuinely privileged information, they may raise such objections at the time the questions are asked.

and DENIED in part; the allegations in plaintiffs' complaint concerning these defendants are hereby DISMISSED except insofar as they relate to conduct described in paragraphs 31, 47, and 50 of the complaint.

3. Plaintiffs shall file an amended complaint conforming to the accompanying Memorandum Opinion within ten days of the date of this Order.

4. The motion of all defendants to dismiss for failure to state a claim or pursuant to the court's discretion under the abstention doctrine is DENIED.

5. Defendants' motion for a protective order is DENIED.

6. Plaintiffs' motion to compel discovery is DENIED, without prejudice.

7. Defendant's motion for a protective order staying discovery is DENIED.

8. Any further discovery in this action shall be completed by July 30, 1995.

SO ORDERED.